IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA SPENCER, | : | Civil No. 3:17-cv-2158 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| DAVID VARANO, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

On November 15, 2017, Plaintiff Maria Spencer ("Spencer"), an inmate formerly

housed at the Columbia County Prison, in Bloomsburg, Pennsylvania, commenced this civil

rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are former

Warden William Campbell[1], Deputy Warden David Varano, Lottie Neiswender, R.N., Janelle

Ackerman, Joseph Fallencer, and Shawn McGlaughlin, M.D. (Doc. 1). The allegations of

the complaint pertain to Spencer's incarceration at the Columbia County Prison. (Id.).

Presently pending before the Court is a motion (Doc. 28) to dismiss by Defendants

Varano, Neiswender, and Ackerman, and a motion (Doc. 30) to dismiss by Defendant

McGlaughlin. Spencer filed a brief in opposition to Defendants' motions to dismiss. (Doc.

---

[1]     William Campbell passed away on April 27, 2016, before this action was initiated. In the
complaint, Spencer did not name a personal representative of the deceased estate's, and she failed to
serve Campbell's estate pursuant to Rule 4 of the Federal Rules of Civil Procedure. Consequently,
Campbell is not a proper party, and he will be dismissed as a party to this action. See, e.g., Darmanchev
v. Roytshteyn, 234 F.R.D. 78, 80 (E.D. Pa. 2005); Lange v. Burd, 800 A.2d 336, 341 (Pa. Super. 2002)
(citations omitted) ("A dead man cannot be a party to an action, and any such attempted proceeding is
completely void and of no effect.").

43). In her opposition brief, Spencer only addresses Defendants' arguments regarding the doctrine of res judicata, and the arguments regarding her request for punitive damages and attorney's fees. (*See* Doc. 43). Spencer does not respond to any of the other arguments set forth in the motions to dismiss. Because Spencer failed to respond to the remaining arguments, they are deemed unopposed and abandoned. *See* M.D. Pa. Local Rule 7.6; *Sikkelee v. Precision Airmotive Corp.*, 2011 WL 1344635 (M.D. Pa. 2011) (dismissing claims as unopposed when the plaintiff failed to respond to arguments made by the defendants in support of their motion to dismiss); *Hoffman v. Dougher*, 2006 WL 2709703, at *4 (M.D. Pa. 2006) (granting defendant's motion to dismiss on plaintiff's substantive due process claim that was treated as abandoned where plaintiff failed to offer any argument in support of the claim). Consequently, the motions are ripe for disposition and, for the reasons set forth below, the Court will grant the motions to dismiss.

## I.    Motion to Dismiss Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

2

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

3

omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II.   Allegations of the Complaint

Spencer alleges that from July 29, 2014 through August 12, 2015, and October 3, 2015 through November 23, 2015, Defendants violated her constitutional rights when she was housed as a pretrial detainee at the Columbia County Prison. (*See* Doc. 1).

Spencer alleges that Defendants Varano, Neiswender, Ackerman, and McGlaughlin were deliberately indifferent to her serious medical needs. (Doc. 1, p. 9). Specifically, Spencer alleges that Varano and Neiswender placed non-medically cleared inmates in her cell. (*Id.*). She alleges that Varano and Neiswender failed to provide medication or medical care between the hours of 10:00 p.m. and 6:00 a.m., and instead provided medication three times per day, at 6:00 a.m., 3:00 p.m., and 8:00 p.m., in accordance with prison policy. (*Id.* at pp. 9-10). She similarly alleges that Defendant McGlaughlin refused to administer

4

medication at the prescribed times and instead followed the prison's med-pass procedures and provided medication up to three times per day. (Id. at p. 10). Spencer alleges that the failure to take her medications at the prescribed times resulted in harm to her transplanted kidney and subjected her to the risk of having a stroke. (Id.). She further alleges that Defendants Varano, Neiswender, and McGlaughlin refused to provide treatment to prevent vomiting secondary to another underlying medical condition, gastroparesis. (Id. at p. 10).

Spencer next alleges that Varano, Neiswender, and Fallencer failed to provide her with medical diet meals. (Id. at p. 9).

Spencer alleges that Defendant Neiswender intentionally delayed scheduling an ophthalmology appointment which resulted in damage to her eyes. (Id. at p. 10). Spencer further alleges that Defendant Neiswender only provided her with one needle per week to inject her insulin, allowed other inmates to use her lancet pen, failed to provide medication if she was too ill to walk to the medication line, and failed to provide her test results and glucose logs to the treating medical specialist. (Id. at 10-11).

Spencer alleges that Defendants Varano and Ackerman placed her in solitary confinement, and denied her phone, commissary, and visiting privileges in retaliation for filing grievances. (Id. at p. 11). She likewise alleges that Defendant Varano placed her in solitary confinement in retaliation for filing a federal lawsuit, and failed to provide her with personal items purchased by her family. (Id. at pp. 11-12). Spencer claims that Defendants

Varano and McGlaughlin transferred her to state prison in retaliation for filing grievances. (*Id.* at p. 12).

Spencer alleges that Defendant Varano enforced a discriminatory policy by allowing her to be housed on the medical block with an unsanitary shower. (*Id.* at p. 12).

Spencer next claims that Defendant Varano denied her access to the courts based on an alleged inadequate law library, and failure to apply adequate postage to her court mailings. (*Id.* at p. 13). She also sets forth Sixth Amendment and Due Process claims against Defendant Varano. (*Id.* at p. 13).

For relief, Spencer requests compensatory and punitive damages, as well as attorney's fees and costs. (*Id.* at p. 3).

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

6

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A. Res Judicata

Defendants move to dismiss certain claims against them based on the doctrine of res judicata due to the fact that Spencer previously filed the identical claims in a prior action. (Doc. 29, pp. 4-7; Doc. 31, pp. 6-7).

Res judicata is an affirmative defense that may be properly raised in a Rule 12(b)(6) motion when its applicability is apparent on the face of the complaint. *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Res judicata comprehends both "claim preclusion" and "issue preclusion." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Claim preclusion "applies to all claims actually brought or which could have been brought in a prior action regardless of whether they were asserted or determined in the prior proceeding." *Inofast Mfg., Inc. v. Bardsley*, 103 F. Supp. 2d 847, 849 (E.D. Pa. 2000), *aff'd mem.*, 265 F.3d 1055 (3d Cir. 2001). Issue preclusion, also known as collateral estoppel, "bars relitigation only of an issue identical to that adjudication in the prior action." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990). The party asserting claim preclusion must establish "(1) a final judgment on the merits in a

prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Inofast*, 103 F. Supp. 2d at 849; *see also Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1086 (3d Cir. 1988). All three prongs are satisfied here. In this case, it is readily apparent that from the face of Spencer's complaint that res judicata precludes certain claims.

First, for purposes of a res judicata analysis, dismissal pursuant to Rule 41(b) is considered a final judgment on the merits. *See* FED. R. CIV. P. 41(b) (an involuntary dismissal pursuant to Rule 41(b) "operates as an adjudication on the merits"). On November 13, 2015, this Court dismissed Spencer's previous action for failure to comply with a Court Order pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See Spencer v. Campbell, et al.*, 3:15-cv-1584, (Doc. 27). Spencer did not file a motion for reconsideration in that case, or a notice of appeal. *See Spencer v. Campbell, et al.*, 3:15-cv-1584. Therefore, this Court's November 13, 2015 Order dismissing the prior action pursuant to Rule 41(b) is a final order that cannot be disturbed. *See* FED. R. CIV. P. 41(b). The United States Supreme Court has held that the effect of an involuntary dismissal pursuant to Rule 41(b) is that a party is barred from refiling the same claim in the same court in which the claim was originally filed. *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001).

With regard to the second prong, four of the Defendants in this action were named in

8

the prior lawsuit. On August 13, 2015, Spencer initiated a previous lawsuit in this Court,

naming, *inter alia*, Campbell, Varano, Neiswender, and McGlaughlin as Defendants. *See*

*Spencer v. Campbell, et al.*, Civil No.3:15-cv-1584 (M.D. Pa. 2015). This prong is therefore

clearly satisfied with respect to those parties. In addition, res judicata will "not be defeated

by minor differences of form, parties or allegations." *Zhang v. Se. Fin. Grp., Inc.*, 980 F.

Supp. 787, 794 (E.D. Pa. 1997) (quoting *Helmig v. Rockwell Mfg. Co.*, 131 A.2d 622 (Pa.

1957)). The Third Circuit has held that res judicata applies when a plaintiff has "asserted

essentially the same claim against different defendants where there is a close or significant

relationship between successive defendants." *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960,

966 (3d Cir. 1991) (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)).

Moreover, "a lesser degree of privity is required for a new defendant to benefit from claim

preclusion than for a plaintiff to bind a new defendant in a later action." *Id.* at 966 (citing

*Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950) ("[W]here ... res judicata is

invoked against a plaintiff who has twice asserted essentially the same claim against

different defendants, courts have . . . enlarged the area of res judicata beyond any definable

categories of privity between the defendants.")); *see also Marran v. Marran*, 376 F.3d 143,

151 (3d Cir. 2004) ("Privity is merely a word used to say that the relationship between one

who is a party on the record and another is close enough to include that other within the res

judicata.") (internal quotation marks and citations omitted). In this case, Defendant

Ackerman was not a party to the previous case, but she is closely related to the Defendants named in the prior case. Defendant Ackerman is a correctional officer at the Columbia County Prison and was allegedly involved in the same violation of Spencer's constitutional rights as the other Defendants. Therefore, Defendant Ackerman was in a "close" relationship with all Defendants for purposes of the res judicata assessment.

The third prong is likewise satisfied, as courts take a broad view of what constitutes a "cause of action" for res judicata purposes, focusing on whether the underlying events of the claims are "essentially similar." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (citing *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)). In making that determination, courts scrutinize "whether the acts complained of and the demand for relief are the same . . . whether the theory of recovery is the same . . . whether the witnesses and documents necessary at trial are the same . . . [and] whether the material facts alleged are the same." *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) (internal citations omitted) (emphasis in original).

In the present action, Spencer sets forth nearly identical allegations as the allegations in the previous action. In the prior action, Spencer set forth the following claims:

- A claim against Defendant Varano for denial of access to the courts based on an inadequate law library.

- A claim against Defendants Varano, Neiswender, and McGlaughlin for deliberate indifference to a serious medical need.

10

- A claim for unconstitutional conditions of confinement.

- A claim for unconstitutional discrimination based on an alleged unsanitary shower in the medical block.

- Claims against Defendant McGlaughlin relating to her August 12, 2015 transfer from the Columbia County Prison to SCI-Muncy and his alleged refusal to provide medication or treatment to stop her vomiting.

See Spencer v. Campbell, et al., Civil No. 3:15-cv-1584 (M.D. Pa. 2015).

It is clear that Spencer's complaint has merely restated the cause of action from her previous court case. The acts complained of – denial of access to the court, deliberate indifference to a serious medical need, unconstitutional conditions of confinement, and discrimination based on unsanitary living conditions – are the same. Additionally, the theories of recovery – liability for First Amendment denial of access to the courts, Eighth, and Fourteenth Amendment violations – are the same.

Spencer has had prior opportunities to litigate her claims against Defendant McGlaughlin that he refused to prevent her vomiting and her August 2015 pretrial transfer to state prison. Furthermore, Spencer had the opportunity to litigate her current claim against Defendant McGlaughlin regarding the timing of her medication administration, as this claim involves the same time frame as the prior action. Additionally, Spencer had the previous opportunity to litigate her claims against Defendants Varano, Neiswender, and Ackerman regarding deliberate indifference to her serious medical needs, denial of access to the courts, and unconstitutional conditions of confinement. Spencer's present claims, except

11

for the First Amendment retaliation, Sixth Amendment, and Due Process claims, are substantially repetitive of the claims brought in the previous case filed with this Court. *Compare* (Doc. 1) *with Spencer v. Campbell, et al.*, 3:15-cv-1584 (M.D. Pa. 2015). Consequently, these claims will be dismissed as barred by res judicata.

## B. Defendant McGlaughlin's Motion to Dismiss on Statute of Limitations Grounds

Defendant McGlaughlin argues that even if Spencer's claims against him were not barred by the doctrine of res judicata, the claims would still be barred on another, independent ground, the statute of limitations. (Doc. 31, pp. 7-8).

The running of the statute of limitations is an affirmative defense. *See* FED. R. CIV. P. 8(c)(1). A complaint is subject to dismissal on statute of limitations grounds only when the statute of limitations bar is apparent on the face of the complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (In the Third Circuit, a limitations defense may be raised by a motion under Rule 12(b)(6) "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975))).

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996).

12

In Pennsylvania, the statute of limitations for a personal injury action is two years. See 42 Pa. C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *Sameric Corp. of Delaware. Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. The "continuing violations doctrine" is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell*, 263 F.3d at 292 (quoting *Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)). The doctrine will apply only where the plaintiff can establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Cowell*, 263 F.3d at 292 (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)).

This inquiry involves consideration of three factors: "(1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of

13

isolated incidents; and (3) the degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Cowell*, 263 F.3d at 292. The consideration of 'degree of permanence" is the most important of the factors. *Cowell*, 263 F.3d at 292 (citing *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983)).

In the instant action, Spencer requests this Court to entertain a federal civil rights lawsuit filed on November 15, 2017[2], stemming from events that allegedly took place between July 29, 2014 and November 23, 2015. The complaint states that the alleged retaliatory transfer to SCI-Muncy occurred on August 12, 2015, which was clearly more than two years prior to the filing of the instant action. (Doc. 1, p. 6). Consequently, Spencer's claim against Defendant McGlaughlin regarding an alleged retaliatory transfer is barred by the statute of limitations.

Spencer's other two claims against Defendant McGlaughlin, i.e., the alleged refusal

---

[2]     While it is true that the complaint was filed with the Court on November 24, 2017, Spencer signed and dated the complaint on November 15, 2017. The date on which Spencer delivered her complaint to prison authorities for mailing is the date that controls. *See Houston v. Lack*, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (applying the "mailbox rule" and accepting the date that the prisoner delivers his legal filing to prison authorities for mailing as the date of court filing); *see also White v. Pa. State Police*, 408 F. App'x 521, 522 (3d Cir. 2010) (finding that a prisoner receives the benefit of the mailbox rule for a § 1983 complaint). When applying the prisoner mailbox rule, courts have used the date the documents were signed as the presumed delivery date when there is no clear record of delivery to prison officials. *Howard v. Masteron*, 2009 WL 5184476, at *1 n. 2 (E.D. Pa. 2009) ("Pursuant to the prison mailbox rule ... [the] documents [are] filed on the date [the plaintiff] signed them.") (citing *Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003)).

14

to treat her vomiting and the alleged refusal to administer her medications at the times

prescribed, will not be dismissed as barred by the statute of limitations. Spencer alleges

that from July 29, 2014 through November 23, 2015, Defendant McGlaughlin refused to

administer medication at the prescribed times and instead provided medication up to three

times per day. (Doc. 1, pp. 9-10). Spencer also alleges that from January 2015 through

November 23, 2015, Defendant McGlaughlin refused to provide treatment to prevent

vomiting. (*Id.* at p. 10). Because it is not apparent from the face of the complaint that these

claims are barred by the statute of limitations, the Court will deny Defendant McGlaughlin's

motion on this ground.

## C. Deliberate Indifference Claim

Defendants Varano and McGlaughlin argue that even if Spencer's deliberate

indifference claim was not barred by the doctrine of res judicata, it would still be subject to

dismissal for failure to state a claim. (Doc. 29, pp. 11-12; Doc. 31, pp. 9-13). The Court

agrees. Spencer alleges that Defendants were deliberately indifferent to her serious

medical needs.[3] The Court concludes that the deliberate indifference claims against Varano

---

[3]     As stated, Spencer's claims are based on her status as a pretrial detainee. Pretrial detainees
are protected by the Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual
Punishment Clause of the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).
However, the Fourteenth Amendment provides "at least as much protection as does the Eighth
Amendment," and in cases involving allegations of inadequate medical care, the Third Circuit Court of
Appeals typically reviews both claims using the Eighth Amendment standard. *Gannaway v. Berks Cnty.
Prison*, 439 F. App'x 86, 89 n.2 (3d Cir. 2011) (nonprecedential) (citing *Natale v. Camden Cnty. Corr.
Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Thus, the Court will address Spencer's claims pursuant to the
Eighth Amendment.

and McGlaughlin simply do not rise to the level of a cognizable constitutional violation.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like

measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a non-physician defendant cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. *Durmer*, 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Applying these constitutional benchmarks, it is apparent that, with respect to Deputy Warden Varano, a non-medical Defendant, Spencer's complaint fails to state a claim upon which relief can be granted. Accordingly, Spencer's deliberate indifference claim against Defendant Varano will be

17

dismissed.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. *Farmer v. Carlson*, 685 F. Supp. at 1339.

The only allegations against Defendant McGlaughlin are that he refused to administer Spencer's medications at the times prescribed, and instead followed prison policy regarding distribution of medication, refused to provide any medication or treatment to prevent her from vomiting, and transferred her to SCI-Muncy. (Doc. 1, pp. 9-10). The allegations in Spencer's complaint clearly demonstrate that she received medical attention, and that the attention she received lacks the requisite deliberate indifference to support a Section 1983 claim. From January 29, 2014 through November 23, 2015, Spencer's

18

complaint, and exhibits, reflect that she was seen by medical staff on numerous occasions. Throughout those visits, Spencer was provided with several different medications and medical assessments. In fact, Spencer does not allege that Defendant McGlaughlin failed to provide her with her medications. Instead, Spencer disagrees with the times her medications were administered, and she disagrees as to whether she needed medication to prevent vomiting. Furthermore, it was noted that Spencer's transfer to SCI-Muncy was in an effort to better meet her medical needs and provide her with twenty-four hour medical care that was not available at the Columbia County Prison. (Doc. 2, pp. 54, 79, 80). At best, Spencer's complaint demonstrates her disagreement with the decisions of medical personnel and prison policy regarding medication distribution. Though she may have wished to receive different medical treatment, her disagreement with the course of action that Defendant McGlaughlin took based on the symptoms she presented, is not enough to state a § 1983 claim. *See Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing *Estelle*, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)); *Hartman v. Corr. Med. Servs.*, 366 F. App'x 453, 455 (3d Cir. 2010) (holding that lapses in medication "do not invoke the Eighth Amendment"); *Ayala v. Terhune*, 195 F. App'x 87, 91 (3d Cir. 2006) (holding that there was no deliberate indifference when the prisoner suffered occasional delays of up to four days in

19

receiving prescription medicine).[4]

Thus, the allegations in the complaint amount to nothing more than Spencer's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. This does not constitute a proper basis for a constitutional claim. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under § 1983, *Hudson v. Palmer*, 468 U.S. 517 (1984), Spencer's civil rights complaint fails to articulate an arguable constitutional claim. *See White*, 897 F.2d at 108-110. Furthermore, Spencer confirms that she has not raised an ordinary negligence claim against Defendant McGlaughlin. (Doc. 25, p. 6).

Consequently, the Court will dismiss Spencer's deliberate indifference medical care claim.

### D. Sixth Amendment Claim

Regarding Spencer's Sixth Amendment claim, the Court notes that the Sixth Amendment of the United States Constitution applies only in the criminal setting and is not applicable to the instant action. *See Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (holding that the Sixth Amendment guarantees only apply to "criminal

---

[4]  Even holding Spencer's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. The complaint and supporting exhibits do not reflect that the institution's medical staff were aware that there was an excessive risk to Spencer's health or safety but wantonly refused to provide her medical care. *Spruill v. Gillis*, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a *pro se* complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it).

prosecutions"). Consequently, any claim pursuant to the Sixth Amendment will be dismissed.

### E.    Due Process Claim against Defendant Varano

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ." U.S. CONST., amend. XIV. The Due Process clause contains both a procedural and substantive component.

The United States Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred. In order to constitute a protected liberty interest, an individual must have a legitimate claim of entitlement to the subject of the deprivation, which rises to more than a unilateral hope, or expectation of it. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to

21

implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Conduct can violate substantive due process if it "'shocks the conscience,' which encompasses 'only the most egregious official conduct.'" *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (quoting *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)). The conduct must be "intended to injure in some way unjustifiable by any government interest . . . ." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Spencer seemingly claims that her placement in solitary confinement and denial of certain privileges violated her due process rights. (Doc. 1, p. 13). Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. The Due Process Clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges inasmuch as these other forms of discipline do not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486; *see Griffin v. Vaughn*, 112 F.3d 703, 706-07 (3d Cir. 1997).

In this case, Spencer has not pled any facts to indicate that her liberty interests were

22

implicated by her placement in solitary confinement or denial of certain privileges. Nothing in the complaint alleges any condition of confinement that was appreciably different from the conditions of other similarly situated inmates or that placement in solitary confinement could constitute an atypical scenario. *See, e.g., Griffin*, 112 F.3d 703 (fifteen (15) months in administrative custody is not atypical). Because Spencer's placement in solitary confinement and denial of privileges did not impose an "atypical and significant hardship" in relation to ordinary prison life, they did not trigger a liberty interest and no process is due even if she alleges a less favorable living situation. *Torres*, 292 F.3d at 150-51. Furthermore, the behavior alleged by Spencer does not rise to the level of "conscience-shocking" behavior and therefore Spencer's substantive due process claim is without merit. Accordingly, the Court will dismiss the due process claim.

## F.    Punitive Damages and Attorney's Fees

Defendants move to dismiss Spencer's request for punitive damages, arguing that she failed to plead facts to satisfy the burden for punitive damages. (Doc. 29, pp. 17-18; Doc. 31, pp. 13-14). Initially, the Court notes that it can address a punitive damages claim at the motion to dismiss stage. *See Gardner v. Barry*, 2010 WL 4853885, at \*10 (M.D. Pa. 2010); *see also Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010) ("[C]ourts do indeed dismiss claims for punitive damages in advance of trial."). In response to Defendants' motions, Spencer argues that she "does not have to establish evil motive or

intent or with callous or reckless indifference on the behalf of the defendant, it is enough that she establish 'deliberate indifference.'" (Doc. 43, p. 14). However, it is well-settled that punitive damages are available against individual defendants in § 1983 actions only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Central Dauphin Sch. Dist.*, 419 F.Supp.2d 639, 649 (M.D. Pa. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The Court finds that Spencer has not demonstrated that Defendants acted with the requisite "evil intent" or "reckless or callous indifference." *Smith*, 461 U.S. at 56. Accordingly, Spencer's request for punitive damages against Defendants Neiswender and McGlaughlin will be dismissed. However, because this action will proceed on the First Amendment retaliation claim against Defendants Varano and Ackerman, the Court will not dismiss Spencer's claim for punitive damages against Defendants Varano and Ackerman at this juncture.

Defendants also move to dismiss Spencer's request for an award of attorney's fees. (Doc. 29, pp. 17-18; Doc. 31, pp. 13-14). Spencer is *pro se* in this matter, representing herself without an attorney admitted to practice before this Court. It is well-settled that *pro se* litigants are not entitled to recover attorney's fees, even if the *pro se* litigant is an attorney. *See Kay v. Ehrler*, 499 U.S. 432, 435-37 (1991); *Zucker v. Westinghouse Elec.*, 374 F.3d 221, 225-30 (3d Cir. 2004); *Sorto v. Dep't of Homeland Sec.*, 2013 WL 4543240,

24

at *2 (M.D. Pa. 2013). Accordingly, Spencer's request for an award of attorney's fees will be dismissed.

## IV. Conclusion

Based on the foregoing, the Court will grant the motions to dismiss filed by Defendants Varano, Neiswender, Ackerman and McGlaughlin.

A separate Order shall issue.

Dated: July ___, 2018

Robert D. Mariani
United States District Judge