# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA SPENCER, | : | Civil No. 3:17-cv-2158 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| DAVID VARANO, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Maria Spencer ("Spencer"), an inmate housed at the State Correctional Institution, Muncy, Pennsylvania, ("SCI-Muncy"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The remaining Defendants are David Varano, Warden of the Columbia County Prison, Bloomsburg, Pennsylvania, and Janelle Ackerman, a Correctional Officer at the Columbia County Prison. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] (Doc. 83). For the reasons set forth below, the Court will grant the motion.

---

[1] Although the instant motion was filed on behalf of both David Varano and Janelle Ackerman, Spencer has elected to withdraw her claim against Defendant Janelle Ackerman (*see* Doc. 109, p. 3 ("Plaintiff admits that she will be unable to sustain a retaliation claim against the defendant, Janelle Ackerman"); *see also* Doc. 111, p. 1 ("Plaintiff releases Officer Janelle Ackerman from this lawsuit.")). As such, summary judgment will be entered in favor of Defendant Janelle Ackerman. The substance of this Memorandum deals with Spencer's claims against Defendant Varano.

I. **Statement of Undisputed Facts**[2]

Spencer was incarcerated at the Columbia County Prison, intermittently, between July 28, 2014 and November 23, 2015. (Doc. 85, Statement of Material Facts, ¶ 1; Doc. 111, Counterstatement of Material Facts, ¶ 1).

Defendant David Varano was hired as the Deputy Warden of the Columbia County Prison in December 2014, after Spencer's arrival at the facility. (*Id.* at ¶ 19). In 2016, Varano was promoted from Deputy Warden to Warden, and he remains employed in that capacity. (*Id.* at ¶ 20). Defendant Varano maintains that he never placed Spencer in solitary confinement or revoked any of her privileges, such as phone, visitation, and commissary. (Doc. 85 ¶ 21). Defendant Varano has submitted Block Logs which reveal that Spencer routinely received privileges at the Columbia County Prison, including phone, commissary, visitation, recreation, and Bible Study. (*Id.* at ¶ 22; Doc. 85-2, pp. 44-83). Defendant Varano maintains that he never took any adverse action against Spencer based on her filing of grievances and lawsuits against Columbia County Prison officials. (Doc. 85 ¶ 23). The parties dispute whether prison officials transferred Spencer to a state

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Docs. 85, 111).

2

correctional facility and different cell block at the Columbia County Prison in retaliation for her filing of grievances and lawsuits. (Doc. 85 ¶ 24; Doc. 111 ¶ 24).

When Spencer first arrived at the Columbia County Prison on July 28, 2014, she was placed in cell B51, where she remained until October 1, 2014. (*Id.* at ¶ 25). Defendant Varano was not employed at the Columbia County Prison at that time and had no involvement in the decision to assign Spencer to cell B51. (*Id.* at ¶ 26). Officer Ackerman did not have authority to assign Spencer to a particular cell. (*Id.*). Cell B51 is a double-occupancy cell that is located in B-Block, which is a general population female wing, not solitary confinement. (*Id.* at ¶ 27).

On October 1, 2014, Spencer was transferred to cell M73 in the medical unit of the facility, where she remained until January 15, 2015. (*Id.* at ¶ 28). Although Defendant Varano was not employed at the facility at the time of Spencer's transfer to cell M73, the decision to transfer her to that cell was likely intended to provide Spencer with ready access to medical services, since her diabetes and other medical conditions required constant medical care, including glucose testing and insulin administration multiple times each day. (*Id.* at ¶ 29).

On January 15, 2015, Spencer was transferred to cell F1, where she remained until February 9, 2015. (*Id.* at ¶ 30). The parties dispute whether Defendant Varano was involved in the decision to transfer Spencer to cell F1. (Doc. 85 ¶ 31; Doc. 111 ¶ 31). Cell F1 is located in F-Block, which is a general population female wing of the facility that

includes a day room where inmates are permitted to congregate during the day. (Doc. 85 ¶ 32).

On February 9, 2015, Spencer was returned to cell M73 in the medical unit, where she remained until August 12, 2015. (*Id.* at ¶ 33). The decision to return Spencer to the medical unit was based solely on her medical needs and was in no way based on Spencer's filing of grievances or lawsuits. (*Id.* at ¶ 34). During the timeframe immediately preceding Spencer's transfer back to cell M73, she was experiencing a decline in her medical condition, which included a January 29, 2015 visit to the emergency room, where she was treated for complaints of weakness and dehydration. (*Id.* at ¶ 35). Due to Spencer's medical condition, it made sense to return her to the medical unit where medical care and medical staff members would be more readily available. (*Id.* at ¶ 36). Once Spencer was returned to cell M73, her medical condition continued to be a concern. (*Id.* at ¶ 37). During this time period, Spencer complained that she was not receiving adequate medical care to treat her medical conditions. (*Id.* at ¶ 38).

On July 30, 2015, Spencer filed a grievance claiming that the facility's medical staff was not properly addressing her allergy issues and was not scheduling enough appointments for her to see certain medical providers. (Doc. 85 ¶ 39; Doc. 85-2, pp. 20-22). Spencer contends that she requested an appointment with the prison physician to discuss her ailments. (Doc. 111 ¶ 39).

Defendants contend that, on August 1, 2015, Spencer became irate with the prison doctor, claiming that she was not receiving enough treatment for her allergies. (Doc. 85 ¶ 40). Defendants further contend that Spencer argued that she should be provided medications during the middle of the night, even though the Columbia County Prison did not, at the time, have around-the-clock medical staff available to administer medication after 10:00 p.m. (*Id.*). Spencer asserts that she did not request medication after 10:00 p.m. (Doc. 111 ¶ 40).

On August 3, 2015, Spencer sent a letter to Columbia County Commissioner Rich Ridgway, wherein she set forth complaints about the medical care she was receiving at the Columbia County Prison, and complained that she should be provided medical care between the hours of 10:00 p.m. and 6:00 a.m., when no medical staff was present at the facility. (Doc. 85 ¶ 41; Doc. 85-2, pp. 24-29). Spencer counters that the letter merely alerted the Commissioner about the potential issues that may arise if medical staff are not available after 10:00 p.m. (Doc. 111 ¶ 41).

On August 4, 2015, Spencer filed another grievance complaining that she was being provided medications too early in the evening, and that she should be able to receive her medications during nighttime hours when no medical staff was present at the facility. (Doc. 85 ¶ 42; Doc. 85-2, pp. 30-31). Spencer then filed a second grievance on August 4, 2015, in which she again complained that she was being required to take her medications during medical pass instead of during the times of day that she believed she should take the

medications. (Doc. 85 ¶ 43; Doc. 85-2, pp. 32-33). Spencer contends that she requested her medication to be administered as prescribed, and that the nurses should be advised that she was not required to ask for her medication in advance. (Doc. 111 ¶¶ 42-43).

Based on Spencer's repeated complaints that she was not being provided adequate care for her medical conditions, and that she required around-the-clock medical care, Warden Varano (then Deputy Warden) and Warden Campbell (now deceased) decided that Spencer required a higher level of medical care in a 24/7 infirmary setting, which could not be provided at the Columbia County Prison. (Doc. 85 ¶ 44). Spencer avers that she did not request that medical care be available twenty-four hours per day. (Doc. 111 ¶ 44).

On August 5, 2015, Warden Campbell submitted a DC-5B Petition to Transfer to the Department of Corrections, wherein he requested that the Department of Corrections agree to house Spencer at one of its facilities. (Doc. 85 ¶ 45; Doc. 111 ¶ 45). In the DC-5B Petition, Warden Campbell specifically identified several of Spencer's medical conditions—including kidney transplant and diabetes—and indicated that the request was being made because the Columbia County Prison did not have a medical facility that could provide the around-the-clock care that Spencer required. (*Id.* at ¶ 46). On the day Warden Campbell submitted the DC-5B Petition to the Department of Corrections, he sent a letter to Spencer advising her of the request and explaining that the transfer was intended to address her continued concerns regarding the scope and timing of medical care that she was being provided at the Columbia County Prison. (*Id.* at ¶ 47). The Department of Corrections

approved the transfer request based on the need to provide Spencer with additional medical care. (*Id.* at ¶ 48). On August 12, 2015, Spencer was transferred to SCI-Muncy. (*Id.*). Defendants maintain that the decision to request Spencer's transfer to the state correctional system was based solely on the need to provide Spencer with additional medical care that could not be provided at the Columbia County Prison, and that the decision was in no way motivated by Spencer's filing of grievances or lawsuits. (Doc. 85 ¶ 49).

On September 3, 2015, Spencer returned to the Columbia County Prison to attend a pre-trial hearing in her criminal case. (Doc. 85 ¶ 50; Doc. 111 ¶ 50). She remained at the Columbia County Prison for approximately twenty-four hours before returning to SCI-Muncy. (*Id.*). During this one-day period of confinement, Spencer was placed in the medical unit in order to provide care for her medical conditions. (*Id.* at ¶ 51).

On October 13, 2015, Spencer again returned to the Columbia County Prison for the trial in her criminal case. (*Id.* at ¶ 52). When Spencer returned to the facility, she was placed in the medical unit, where she remained until October 26, 2015. (*Id.* at ¶ 53). On October 26, 2015, Spencer was transferred from the medical unit to cell C0A because she was a continuous disruption and security risk in the medical unit. (*Id.* at ¶ 54). Defendants contend that when Spencer returned to the Columbia County Prison from state custody, she consistently acted out and refused to take the necessary steps to control her diabetes and her health, particularly in the days leading up to her transfer to cell C0A. (Doc. 85 ¶ 55). Specifically, on October 23, 2015, Spencer refused to check her blood sugar levels on

7

multiple occasions. (*Id.* at ¶ 56; Doc. 111 ¶ 56). Spencer explains that she did need insulin at this time because she was not eating, as the food was not appropriate for her diet. (Doc. 111 ¶ 56). Also on October 23, 2015, correctional officers learned that Spencer was refusing to eat the food she was provided and, upon investigation, it was confirmed that Spencer was throwing away her meals and hoarding snack bags that she was specially provided because of her diabetic condition. (Doc. 85 ¶ 57; Doc. 111 ¶ 57). Defendants contend that Spencer's refusal to eat required medical staff members to begin logging her food consumption to ensure her safety. (Doc. ¶ 58). In response, Spencer states that she did not eat because the food was not within her dietary restrictions. (Doc. 111 ¶ 58).

Defendants contend that, on October 24, 2015, another altercation occurred in the medical unit during which Spencer refused to take her insulin and instead squirted the insulin that she was provided on a medical cart. (Doc. 85 ¶ 59). During the incident, Spencer yelled at the facility's nurse and threatened that she would seek to have her nursing license revoked. (*Id.* at ¶ 60). Spencer asserts that the facility nurse threatened to sue her. (Doc. 111 ¶ 59).

Also on October 24, 2015, another inmate in the facility reported to a staff member that Spencer was boasting about the fact that she was purposefully refusing food and insulin so that she would be hospitalized, which hospitalization she would then use as a pretext to sue prison officials and members of the medical staff. (Doc. 85 ¶ 61; Doc. 111 ¶ 61). Although the inmate provided this information, Spencer states that the information is

not true. (Doc. 111 ¶ 61). On October 25, 2015, Defendants state that another inmate housed in the medical unit voiced concerns to staff members about her own security given Spencer's presence in the medical unit. (Doc. 85 ¶ 62). The inmate explained that Spencer was "acting crazy" and was coming into her cell multiple times during the night in order to use the bathroom. (Id.).

Based on the problems that the facility was experiencing with Spencer in the medical unit, prison officials transferred Spencer from the medical unit to another general population unit, in an attempt to subdue Spencer's outbursts. (Id. at ¶ 63). Thus, Defendants assert that Spencer was transferred to cell C0A because of legitimate penological concerns regarding discipline and security, not because of the filing of grievances or lawsuits. (Id. at ¶ 64). Cell C0A was an overflow general population cell block. (Id. at ¶ 65). Spencer was entitled to all the ordinary privileges of Columbia County Prison inmate, such as phone, commissary, visitation, recreation, and Bible study. (Id.). Spencer contends that she was placed in this cell to be closely monitored. (Doc. 111 ¶¶ 63-65).

On November 23, 2015, following Spencer's conviction and sentencing, she left the custody of the Columbia County Prison and returned to SCI-Muncy to carry out her life sentence. (Doc. 85 ¶ 66).

## II. **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality,

. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the

11

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

### A.     Statute of Limitations

Defendant Varano argues that Spencer's claims against him are barred by the statute of limitations. A claim brought pursuant to 42 U.S.C. § 1983 is subject to the same statute of limitations that applies to personal injury tort claims in the state in which such a claim arises. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). Spencer's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions. 42 PA. CONS. STAT. ANN. § 5524(2). The statute of limitations period accrues when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. *See Garvin v. City of Phila.*, 354 F.3d 215 (3d Cir. 2003); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

It is undisputed that the incidents that form the basis of Spencer's retaliation claim against Defendant Varano occurred on August 12, 2015, when Spencer was transferred from the Columbia County Prison to state prison, and on October 26, 2015, when Spencer was transferred from the medical block to an intake cell at the Columbia County Prison. (Doc. 109, p. 3; Doc. 110, pp. 3-4). Thus, the statute of limitations began to run on October

26, 2015, the date of the last purported retaliatory act involving Defendant Varano. Defendants argue that because Spencer did not file her complaint until November 24, 2017, her claims are barred by the statute of limitations. (Doc. 84, pp. 13-15; Doc. 110, pp. 3-5). Spencer disagrees. She represents that she "hand delivered the complaint to the prison authorities with a cash slip on November 17, 2017. The Department of Correction[s] applied postage and mailed the document to the Court on November 22, 2017. The Court filed the complaint on November 24, 2017." (Doc. 109, p. 11; *see also* Doc. 108 ¶¶ 1, 9). Review of the complaint confirms that Spencer executed the complaint on November 15, 2017. (Doc. 1, p. 14).

Under the prison mailbox rule, a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011). In establishing this rule, the Supreme Court recognized the unique challenge prisoners confront in that they cannot personally deliver their documents to the courthouse for filing, nor can they control when their documents are approved to be sent through the mail. *Houston*, 487 U.S. at 271. "The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward

inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." *Id.* at 275.

Based on the date of execution of the complaint, November 15, 2017, and Spencer's representation that she delivered the complaint to prison authorities on November 17, 2017, the complaint is deemed filed on November 17, 2017. The incidents involving Defendant Varano occurred on August 12, 2015, when Spencer was transferred to state prison, and October 26, 2015, when Spencer was transferred from the medical block to an intake cell. Because both of these events took place prior to November 17, 2015, the earliest possible date on which any allegation in the complaint against Defendant Varano could be deemed timely, they are barred by the two-year statute of limitations applicable to § 1983 actions.

### B. Rule 56(d)

In Spencer's brief in opposition to Defendant's motion for summary judgment, she asserts that the motion should be denied under Federal Rule of Civil Procedure Rule 56. (Doc. 109, pp. 8-10).

The United States Supreme Court has recognized that premature motions for summary judgment should be dealt with pursuant to the provisions of Rule 56 if the opposing party has not made full discovery. *Celotex v. Catrett*, 477 U.S. 317, 326 (1986). Specifically, Rule 56(d) provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;

14

    (2) allow time to obtain affidavits or declarations or to take discovery; or

    (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).  Thus, a district court has discretion to decide whether a party's summary judgment motion is ripe.  *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984).

    In order to preserve the issue for appeal, Rule 56(d) requires the party opposing a motion for summary judgment to file an affidavit or declaration outlining the reasons for the party's opposition.  *See Galgay v. Gil-Pre Corp.*, 864 F.2d 1018, 1020 n.3 (3d Cir. 1988).  If an opposing party makes a Rule 56(d) motion without an affidavit, the United States Court of Appeals for the Third Circuit has stated that the opposing party "must still 'identify with specificity 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'"  *Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994) (citations omitted).  The opposing party, however, must be specific and provide all three types of information required.  *See, e.g., Radich v. Goode*, 886 F.2d 1391, 1394-95 (3d Cir. 1989) (affirming district court's grant of summary judgment when the opposing party only identified several unanswered interrogatories and failed to file an affidavit, identify how the unanswered interrogatories would preclude summary judgment, or identify the information sought).

    Here, the parties were provided with an abundance of time in which to pursue discovery in this matter.  Indeed, over the course of two years, Spencer served Defendants with multiple discovery requests and Defendants have responded to those requests.  (*See*

Docs. 114-1 through 114-4). Additionally, a review of Spencer's pending discovery requests reveals that she is seeking materials that are irrelevant and would not preclude a grant of summary judgment in Defendant's favor as her claims against Defendant Varano are time-barred.[3] Therefore, the Court will deny Spencer's request for relief under Rule 56.

## IV. Conclusion

The Court will grant Defendants' motion (Doc. 83) for summary judgment. A separate Order shall issue.

*[signature]*

Robert D. Mariani
United States District Judge

Dated: September 4, 2020

---

[3] Spencer requests information regarding her January 2015 transfer from the medical unit to F-Block, information concerning her transfers to the medical block in October 2014 and February 2015, and information concerning the placement of other inmates in the intake cell. (Doc. 109, pp. 9-10). However, as stated, the only remaining claim in this action is Spencer's retaliation claim against Defendant Varano based on the August 12, 2015 transfer to state prison, and the October 26, 2015 transfer from the medical block to an intake cell at the Columbia County Prison. (*See* Doc. Doc. 109, p. 3; Doc. 110, pp. 3-4).